United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning, ladies and gentlemen. We have two cases to be argued this morning and two more on the calendar to be decided on the briefs. The first case to be argued is Mass Engineered Design v. Planar Systems, 2019-1365. Mr. Long, please proceed. Thank you, Your Honor, and good morning. Please, the court, my name is David Long. I'm with the essential patent law firm representing the appellate planar systems. One thing, if you'll indulge me, I'd like to start out first explaining or clarifying some procedural issues that will help understand better this single piece support arm issue for the 331 patent. This case kind of illustrates some of the problems you get when a transferring court rules on significant issues like plan construction and then sends it to another court that doesn't have that background and context. In this case, the plan was originally sued in Texas. The Texas court agreed to transfer the case to Oregon, but only after the court construed the claims. So one of the issues that came up in claim construction was whether or not a single piece support arm in claim one of the 331 patent, whether or not that needed to be formed as a single piece or if it could be an integral piece of several components combined together. At the end of the day, the ultimate agreement and ruling was that, okay, it can be an integral piece, but these pieces need to be permanently joined together. Similarly, with claim nine, the issue was whether or not the ultimate construction was that there is one arm that extends on both sides of the support column as opposed to one arm extending on one side and an arm extending on the other. Why is that important? When you look at the planar products, as you may recall, and we have them in pages 23 through 25 of our blue brief, they basically have a central post with two identical arms that have rings on one end, and you slide one arm's ring over the post and have it extend in one direction, take the other ring of the other arm, slide it over the post, and it extends in the other direction. They're two separate pieces. They're never permanently joined, and you have one arm extending on one side, one arm extending on the other. So we should have won based on that claim construction. But the court, the case was sent to Oregon, and the judge there didn't want to peer into that black box claim construction ruling, just kind of took it at face value. And so the ruling we ultimately got was the judge looked at a dictionary to see what integral meant and otherwise ruled that when you slide these two arms together, during that moment, they may be integral and meet these limitations, or at least there could be a fact issue of that. Now, mass has taken issue in the opposition paper saying, well, the judge didn't instruct the jury on what integral meant, and he didn't ask for jury instructions on what it meant, and that's why it's very important to understand the procedure. The court in this case, like most courts do, ruled that there would be no evidence or argument contrary to the court's claim construction. And that makes sense, right, to do that. But because of that, plainly there wasn't going to be a jury instruction that Planer wanted that the court had rejected, and moreover, Planer could not tell the jury that integral meant permanently connected. Mass, on the other hand, could, because that would be consistent with the jury's instruction. So I thought it was important to understand that procedural posture that got us to where we're at here, and that none of these issues were waived. This has always been a claim construction issue. Otherwise, we've gone through a lot of detail in our brief about the prosecution history and other things, and so we'll stand on that brief and the arguments that we put there and explanation, unless your honors have any questions on that and certainly entertain that. If not, then I'd like to talk about the 978 patent, and specifically the support means limitation of the 978 patent. Now, you may recall the 978 patent is about supporting an arm that holds monitors in a way that allows that arm to rotate. So if you have one monitor on one end of the arm and another monitor at the other end, they can be side by side in what they call horizontal orientation. But importantly, because you're supporting it in a way that can rotate, you can actually rotate this arm clockwise so that one monitor is now above the other monitor in what they call a vertical orientation. So supporting this arm in a way that allows it to rotate clockwise or counterclockwise between a horizontal and vertical orientation is very important for this claim. This claim is a means plus function limitation. The support means for supporting the arm. There's no dispute about that. The corresponding structure is a rotary joint in Figure 7 and a rotatable club in Figure 19. We have some colored highlighted versions of those figures in our blue brief, pages 35 to 36, if you didn't find that structure. Now, the 978 patent specifically talks about this function, and we cite on page 8 of our blue brief, column 3, lines 29 through 34 of the 978 specification. And that part of the specification specifically talks about the rotary joint, and that is it is, quote, configured to perform two functions. So the first function it says is, quote, to support the arm 18 for rotation about a generally horizontal axis 26 through the upright 20, end quote. It then goes on to talk about another function not an issue here. And so when you look at the claim language, when you look at the corresponding structure, a rotary joint, rotatable club, that's all consistent with what the patent's about. Why is that relevant? When you talk about the planar products, there are two separate arms slid over this pole. There's no physical way to rotate either of these arms clockwise. There's no way to mount a monitor in a vertical orientation. This is just a very, very different way. We described that in our briefing. We talked about mass-to-system force analysis, which would exist in any support. You'll always have to have a force pushing up. Mr. Long and Judge Dyke, would you address the other means plus function element of the 978, the mounting means, and particularly your argument that the three hinges don't do the mounting in the same way as the ball and socket joint of the patent structure? Yes, sir, absolutely. And we have, of course, figures on this in pages 44 through 45 of our brief. So the corresponding structure in the patent is this ball and socket joint. And this is something that you can directly rotate to any position you want to. In our patent, it's a very different design. It has what are called three hinge joints. Once a hinge door hinge, it can only rotate in one direction. So having three hinge points is already a big change. It's certainly not an insubstantial change, adding nothing of significance. But then it goes further. Having those separate independent joints allows the planar product to have a biasing spring and a joint that controls tilting. In other words, the weight of the TV, if you put it on this mount, will just cause it to sag downwards. So the planar product can put a biasing spring to bias that upwards. It also has some independent torque things you can do to require less or more force to tilt it up and down. The same thing with the tilt mechanism. It has its own separate torque system to govern how easy or hard it is to tilt it left or right. And so what's good about that – go ahead. Wait, wait. This is a doctrine of equivalence issue. And as I understand it, you don't dispute that hinges perform the same function as a ball and socket, but your whole argument is that they don't do it in the same way. Is that correct? Close. It's a means plus function of structural equivalence. But we don't dispute it does the function. We do dispute that it's in a very different way. For example, if you look at that ball and socket joint, if you want to keep it from sagging down under the weight of a monitor, you have to tighten it up a lot to counteract that gravity. But now that you've tightened it, try to swivel it left or right. You've really increased that force, whereas with a planar design, they're just independently tunable, independently different. Again, it's certainly not an insubstantial change, adding nothing of significance, which is what's required for it to be a 112 structural equivalence. Mr. Long, this is Judge Stoll. On that issue, is there anything in your specification that talks about the importance or advantages of having the ball and socket joint as opposed to another kind of joint? A couple answers to that. One thing is that Stoll's benefits of this ball and socket joint, that it's kind of revolutionary, and it's the only disclosure that they have. Can you give me a column and line number site for that about being revolutionary? It's in our blue brief. So let me see if I can find that real quick. Thank you. Yes, Your Honor. Mr. Long, if it's not readily at hand, you might find it and present it to us on rebuttal. Yes, Your Honor, I agree, and I'll do that. In fact, I see that. I believe I'm going into my rebuttal time, so if Your Honors don't have any questions from now, Judge Stoll, I'll look up the answer to your question and be back to you when I'm here on rebuttal, if that works. Oh, yes, thank you. We will save your rebuttal time, Mr. Long. Mr. Edmonds. Mr. Edmonds, are you there?  Let me begin by addressing briefly this ball joint issue. In column five at approximately line 57, it mentions that the ball joint is preferably configured to provide limited tilting of the display. If you read the specification as a whole, the gist of the ball joint is being able to adjust the monitors to a desired degree when they're facing the user. How is a ball joint mounted in the same way as three hinges? This was a hotly contested issue. The jury heard expert testimony on both sides, and the jury took these devices back with them. The three hinge joints are co-located, and so they allow rotation in an X, Y, and Z axis. The ball and socket joint also allows rotation in X, Y, and Z axis. There's a very slight, tiny offset of an axis because the three joints are co-located, but they're not in exactly the same spot in space. But that was the equivalency was that when you co-locate three hinge joints that move in X, Y, and Z, then that's equivalent to a ball joint that moves in X, Y, and Z. Okay, but that's the same function, and they don't dispute the function. The question is, how is that the same way as a ball joint? And your only testimony about that seems to be directed to a functional analysis. Well, it's a joint, which is the way, and the three co-located hinge joints are an equivalent way to the ball joint. And, yeah, I think you pointed out they do perform the same function. Mr. Edmonds, is it your view that on a 112-6 means plus function claim that you need a structural equivalent will suffice, but that doesn't require a function-way result analysis? Is that your view? No. It has to perform the same function, which is agreed, and it has to have substantially the same way, substantially the same results, the results not contested. So we're just talking about the structures in substantially the same way. And, you know, the expert testimony was that the three co-located hinges were an equivalent structure to the ball. The planar product essentially just, if you pull apart slightly that ball joint, you would pull it apart into the three hinges. If you compress the three hinges, you would compress them into a ball joint. But on the face of it, three hinges and a ball joint seem to be different and not the same way. And the analysis of your expert is just that the forces are the same. Isn't that correct? No, because the way is three co-located hinges versus a ball joint. That's the way. And the testimony was, and this was an evidentiary issue as far as equivalency, the testimony was that that is substantially equivalent way and substantially equivalent structure. Why? That was covered. Hi, this is Judge Stoll. Could you elaborate, dig a little bit deeper on this issue and explain what your expert said as to why they were the same way? I mean, you mentioned they're both joints. I think they're both, the expert said something about how they're both on the back of the display. What else is there? They're both joints. One is the co-located joints are, if you put it up, again, that's just an exploded or slightly exploded ball joint. And when you compress the three hinges, then you have a ball joint. If you expand the ball joint, you could expand it out to three hinges. They're all located in the same place. They allow the monitors to go in the same range of movement. And X, Y, and Z. Mr. Edmonds, as I read your brief, you state that virtually every challenge or issue that a talent raises has been waived, which can't be correct. And to assert that every issue is waived is not a very good use of the judicial process making us chase after phantoms. Would you comment on that, your practice of asserting that every issue is waived? Well, I guess I can certainly take a couple of issues because I wanted to get to them first. Council's argument about a differentiation, the biasing spring and this tightening, that argument was first made in their reply brief. It wasn't made in their post-trial motions. And that's just a new argument. I think the starting point for why we took that position is the very limited post-trial motions that they filed. So the JMAL was only on indirect infringement. And it only had to do with a contested fact issue of non-infringing alternatives for a single piece support arm. And the other part of the JMAL was contesting infringement of desired degree, which they haven't pursued on appeal. That's all they had in their JMAL. In their motion for new trial, they argued that the weight of the evidence was that the arms are separated. And the weight of the evidence was that the hinges are not equivalent to a ball joint. And this weight of the – they argued the weight of the evidence was the support means doesn't show vertical to horizontal. Those are the only issues they challenged. They challenged the jury instruction on unassembled products. And they challenged an instruction that said there's insufficient instruction on single piece. That's all they challenged in their post-trial motions. That's all they challenged. That's why we've raised waiver on so many of these issues. And especially with respect to the jury instructions, they didn't object to those. And they gave very limited objections to the licenses that came in, not the license they're asserting on appeal. So, you know, we asserted waiver because there is waiver. If I may address also just some new arguments. Plainer started off by arguing that single piece needs to be prominently joined. That's the first time they made arguments in their reply brief. That's not in their marking briefing. It's not in their post-trial briefing. It's not even in their opening brief. It's not supported at all. Mr. Edmonds? Yes. If I hear your recital about the waived arguments, is it fair to say that you agree that the mounting means argument and the lack of equivalence was properly raised in the motion for new trial? In the motion for new trial, I agree that they did raise the mounting means, the hinges versus the ball joint. Yes, they did raise that in the motion for new trial. They said the weight of the evidence was against it. And, of course, there's evidence on both sides, ample evidence from Mass's expert. As the district court pointed out, from the product themselves, which the jury was allowed to take back into the jury room and use in themselves. So that's when you juxtapose all the arguments they've made now versus the arguments that they made, the very, very limited arguments they made in their JMAL, in their motion for new trial, and the very, very few objections they made during the trial when they had an opportunity to object to these exhibits they're objecting to and to object the instruction. With respect to this integral issue that Plainer's counsel argued, that was an agreed term. Plainer agreed to that term, and they've added this, as I mentioned, they've added this permanently in their reply brief. That was not part of the case, and it's not supported at all. That integral means permanent is something they made up in their reply. With respect to the support means, this idea of the arms going from horizontal to vertical, that's not in the, that's also an agreed claim construction. That's not in the court's, the construction of the court. That's not the function that was agreed upon, and that's just not a requirement. If the district court correctly held that that wasn't a requirement, because it's not. So, and in fact, if you look at the main independent claimant issue with Claim 16, if you look at Claim 1 of the 978 patent, it actually does have that limitation. Claim 16 does not. So their entire argument on this support means allowing this clock-like rotation of the arm assembly is just completely off. And it contravenes the agreed construction that they agreed to. With respect to this integral, counsel stated that they weren't allowed. So the construction of the integral was done by the court in denying their summary judgment motion. And they didn't appeal the denial of their summary judgment motion. And denial of summary judgment is not sufficient under Ninth Circuit to preserve anything for appeal. And as counsel conceded, the jury was not given – instructed on the court's further if clarification of what integral, which was correct, by the way. But they – you know, there's just nothing there. There's nothing there for a plainer to appeal because they agreed to the construction, and it met their construction. I just point out on this issue of waiver, based on the very limited challenges that plainer made in its post-trial motions, for this case to be reversed, the court would have to find that desired degree is indefinite. And desired degree is not indefinite, and it's fully briefed. I don't think counsel mentioned it, so we don't need to belabor it. But if desired degree is not held indefinite, there is no viable appellate challenge to the indirect infringement, which they were finding as indirect infringement on both patents. And that supports the judgment. It supports the damages award. So that the only challenge to indirect infringement was that – was the issue of the single-piece support arm, the desired degree. Indirect infringement. You're talking contributory infringement. And induced. There were findings by the jury of contributory and induced. And the only thing that was in their motion – their JMAL on – or the only thing in their post-trial motions on induced or contributory was saying that there were substantial non-infringing uses for single-piece support arm. They also said that desired degree wasn't met, but they hadn't pursued that on appeal. So even if – all other challenges aside, there are jury findings on contributory and induced infringement. And their challenge to that with single-piece support arm is completely meritless, certainly not sufficient to overturn it. And with that, this can be affirmed whether or not there's some issue with direct infringement. I'd also – counsel mentioned the single-piece support arm. I would just commend the panel to the pictures in our brief that we put. They're taken directly from the exhibits, including the ones that were sent back to the jury. And clearly, these arm segments, when they are installed, assembled per planar's instructions, they mate together. They're made to mate together. They're made to fit together. They have a tooth and groove configuration, and that has to be used. As it was pointed out by Matt's expert, without using the tooth and groove, then it would be unstable and fall over. And there's ample evidence of a single-piece support arm. And also, single-piece is not a requirement of Claim 10. It's only a requirement of Claim 1 of the 331. Just circling back on the hinge, because I'm just about out of time, clearly our positions, they function the same way, and they have these three axes. This is Judge Stoll. Do you have an answer to my question? Which one? What's the question, Judge Stoll? And I will answer it. I apologize. I had a question about in the specification and whether the specification discusses the importance of the ball joint. Well, the specification refers to it as a novel ball joint. As I mentioned, in Column 5, it points out that it's preferably configured to allow tilting. So that's not a requirement. And as I mentioned, and I don't have the exact site for you, but it's described with this whole notion, which is exactly what's captured in Claim 16, of the monitors being able to be adjusted to where the user can adjust them to, we call it booking. Think of it as if you're holding a book in front of you, and you can adjust the front and back of that book. That is the main function of that ball joint, and that's the function that is described in Claim 16. Okay. Thank you. Okay. Thank you, Counsel. We've heard your argument, and we'll hear rebuttals from Mr. Long. No problems. Thank you, Your Honor. First, my apologies, Judge Stoll. I did find that citation in our brief. It's on page 42 of our blue brief, and it footnotes 79, and it cites the Column 2, lines 59 through 60. And that's the point that Mr. Edmonds made, that the patent talks about, quote, a novel ball and socket joint. So this was a big deal, this important thing that was a ball and socket joint. I want to respond to a couple of issues. First of all, the question kind of raised a concern we had, which is if we – I think the term waiver was used 43 times in the opposition brief. We just didn't have the time to go through and rebut every one of these. They just didn't have merit, and it would have taken our whole brief. And even today now, I've heard a new argument from them that we somehow waived the bison spring and torque thing. We had that in our opening brief. They didn't say anything in the opposition, so it's certainly not something I prepared for today. So that was a frustrating part of what we're having to deal with here. One, because I only have a limited amount of time left, first I just want to make sure if there are any questions that Your Honors may have on anything we haven't touched on yet. No, proceed. Okay, thank you. So one issue, for example, on this waiver, they said we didn't appeal the denial of summary judgment motion. What we appealed, and the issue was the denial was based on the claim construction rule, and we certainly preserved that issue. And there's just a whole bunch of other issues. They said we didn't appeal damages. We plainly did. Our most appeal covered that. So that's just – it was just very unfortunate we had to deal with all that. The last thing I'll raise, and I just find it a fascinating issue that would be interesting for the court's guidance, is this baseball arbitration order. And you all may be familiar with baseball arbitration. That's where a decision-maker, in this case the judge, was given two proposed reasonable royalty rates under SHIELD and two undisclosed bases for it. And then the judge would pick one or the other. There was no averaging them, splitting the baby, finding something in the middle. It was pick A or pick B. And so that's what the judge did and issued a one-page order, and we cite that one-page order on the whole language in page 71 of our blue brief. And the problem was that went to the jury. We objected many times to that. There's certainly no waiver there because that was an issue. Counsel, this isn't exactly rebuttal. This wasn't raised by Mr. Edmonds. Are there other points of rebuttal that you want to mention? Oh, yeah, thank you, Your Honor. I apologize. I have some notes here, but quite honestly, I think I have a minute and a half left, I think. I think if Your Honors have no more questions, then we'll rest them on the briefs. Counsel, we appreciate both arguments and the cases submitted.